UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENN ADAMS,

    Plaintiff,

       v.                              No. 3:15-cv-1061(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## **RULING**

Plaintiff Glenn Adams has filed this appeal of the adverse decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 13]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 15]. The undersigned heard oral argument on September 16, 2016. After careful consideration of the arguments raised by both sides, the Court has determined that this matter should be remanded for additional proceedings consistent with this Ruling.

### **Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**[1]

Plaintiff's DIB application alleged a disability onset date of September 23, 2011. His claim was denied at both the initial and reconsideration levels. On November 19, 2013, a hearing was held before Administrative Law Judge Ryan A. Alger ("the ALJ"). The ALJ denied Plaintiff's claim in a decision dated January 21, 2014. The ALJ found at step one in the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 13). At step two, the ALJ found that Plaintiff's severe impairments were diabetes and spine disorder. (R. 14). At the third step, the ALJ found that Plaintiff's impairments, singly and in combination, did not meet or equal the severity of any of the listed impairments. (R. 14-15). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. (R. 15). The ALJ ended his analysis at step four upon finding that Plaintiff was capable of performing his past relevant work as a shuttle driver. (R. 18).

After the ALJ's unfavorable decision, Plaintiff requested Appeals Council ("AC") review. (R. 7). Along with his request for review, Plaintiff submitted additional evidence to the AC. This evidence consisted of an electromyography ("EMG") taken on May 12, 2014. (R. 303-305). The EMG consultant, Dr. Boland, opined that the EMG was abnormal, with electrodiagnostic evidence of chronic L5 segmental axon loss (denervation) most consistent with the chronic lumbar radiculopathy at that level. (R. 303). Dr. Boland also opined that there was mild chronic axon loss in one L2-4 segment muscle (vastus lateralis, femoral nerve) which was not further localizable. (*Id.*). There was no acute or recent appearing denervation. (*Id.*).

---

[1] The parties filed a Stipulation of Facts in this matter. *See* ECF No. 13-2. The Court adopts these facts and incorporates them by reference herein.

The AC denied Plaintiff's request for review. (R. 1-5). In its denial, the AC found that the new evidence did not provide a basis for changing the ALJ's decision.[2] (R. 2). The AC's denial became the final decision of the Commissioner; this action followed.

## Discussion

The AC's evaluation of additional evidence is governed by 20 C.F.R. § 405.401(c). This regulation provides as follows:

> If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and
> (1) Our action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.401(c). In this case, the additional evidence should have been considered.

First, the EMG relates to the period on or before the date of the hearing decision. Although the study was taken approximately four months after the ALJ issued his decision, the results of the EMG show a chronic condition. (R. 303). Its findings are consistent with the symptoms Plaintiff testified to at the hearing, including that his back pain had gotten progressively worse since 2002, and that he has back pain generally. (R. 28, 30, 32-34). In addition, there is nothing in the record suggesting that there was a newly inflicted injury that was

---

[2] There is no dispute that the AC did not apply the correct regulation in its review of the new evidence. The review appears to have been conducted under 20 C.F.R. § 404.970(b), which is the regulation used outside of the New England region. In New England, however, 20 C.F.R. § 405.401(c) applies to the AC's evaluation of additional evidence. The Commissioner argues that application of the improper standard was harmless error because application of the correct standard would not change the final decision in this matter. The Court agrees with the Commissioner that the regulations are "substantially similar." *See Orriols v. Colvin*, No. 3:14-cv-863(SRU), 2015 WL 5613153, at *3 (Sept. 24, 2015). Nevertheless, under either standard, although a close call, the Court finds that remand is appropriate.

3

captured in the EMG results.  Rather, Plaintiff's primary care physician referred Plaintiff for an EMG in May 2014 because of Plaintiff's complaints of right leg numbness.  (R. 303).  Dr. Boland noted that Plaintiff had at least a nine year history of right leg numbness, mainly near the lateral ankle and lower leg.  (*Id.*).  At the hearing, Plaintiff testified to numbness in his right leg.  (R. 32).  In light of the substantial evidence of the persistent and evolving nature of Plaintiff's back impairment, the EMG study does relate to the period on or before the date of the hearing decision.

     The new evidence also meets the second element of Section 405.401(c): there is a reasonable probability that it, alone or when considered with other evidence of record, would have changed the outcome of the decision.  In assessing an RFC for light work, the ALJ found that Plaintiff's allegations of symptoms and limitations were only "marginally credible" because the record provided "little support for his allegations of significant symptoms and limitations." (R. 15).  The ALJ cited to the most recent diagnostic test before him – an MRI from 2004 – which showed only moderate to severe stenosis at L3-L4 and mild to moderate stenosis at L4-L5.  (*Id.*).  The ALJ also noted that Plaintiff's last visit to a specialist was in 2005, and that he did not see nor was referred to a specialist during the relevant period in support of his credibility determination.  (R. 15-16).  The new evidence has a reasonable probability of changing the outcome of the decision because it directly relates to the ALJ's credibility findings.  The EMG was conducted after Plaintiff was referred to a specialist, which the ALJ noted has not occurred in discounting Plaintiff's credibility.  The abnormal EMG findings to which Dr. Boland opined thus would have bolstered Plaintiff's allegations as to the severity of his symptoms.  The EMG also provides valuable information on the progression of Plaintiff's chronic back impairment.

Because the new evidence could have impacted the ALJ's assessment of Plaintiff's credibility, the second element of Section 401.405(c) is met.

Third, Plaintiff clearly meets the good cause requirement of Section 401.405(c): he was prevented from submitting the evidence by an unavoidable circumstance beyond his control. The evidence in question was not available to the Plaintiff until four months after the hearing decision.  At oral argument, the Commissioner made a compelling argument that the period under review must come to a close eventually.  In this case, though, the chronic nature of the impairment, along with the fact that the Plaintiff was uninsured and was receiving care at a center for low income and uninsured persons that did not appear to include comprehensive orthopedic services, allows Plaintiff to satisfy the good cause requirement.

On a last note, this case put the Court (and counsel) in the position of debating the importance of a diagnostic test that had not been contextualized.  How Plaintiff's primary care physician interpreted the EMG, any changes in a course of treatment prescribed, and to what extent this objective finding would impact Plaintiff's functional limitations  – all considerations critical to a disability finding – are not included in any records before the Court.  This makes remand even more compelling: along with remand for consideration of new evidence, further development of the record upon remand would be valuable.

## Conclusion

After a thorough review of the administrative record and consideration of the arguments raised by the parties, Plaintiff's motion to remand is granted.  This matter should be remanded for consideration of the EMG study, and for further development of the administrative record as necessary.

SO ORDERED, this  22nd   day of September, 2016, at Bridgeport, Connecticut.

        */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge